HIGGINS et al., Appellants,

v.

COLUMBIA GAS OF OHIO, INC., Appellee.

[Cite as *Higgins v. Columbia Gas of Ohio, Inc.* (2000), 136 Ohio App.3d 198.]

Court of Appeals of Ohio,
Seventh District, Belmont County.

No. 98 BA 54.

Decided Feb. 4, 2000.

*Southeastern Ohio Legal Services, Deborah Gilbert* and *Robert C. Johns,* for appellants.

*James R. Berendsen* and *Amy L. Koncelik,* for appellee.

WAITE, Judge.

This timely appeal arises from the decision of the Belmont County Court of Common Pleas granting appellees' motion for summary judgment, denying appellant's motion for partial summary judgment, and dismissing appellants' complaint. For all of the following reasons, this court affirms the decision of the trial court in judgment only.

The relevant facts of this case are not disputed by the parties. Appellants, Jean Hails and Mary Higgins, were neighbors in a multifamily apartment complex located on East Church Street, Barnesville, Ohio. Their landlord, Ruth Jarvis, arranged and paid for gas service for the apartment complex provided by appellee, Columbia Gas of Ohio. For reasons not made clear by the record before us, Jarvis directed appellee to disconnect gas service to the entire apartment building. On January 25, 1995, an employee of appellee carried out this request.

Appellants contacted the county's fair housing director, who in turn called appellee to inform it that gas service had been terminated to a building that was occupied. Appellee refused to restore gas service unless a tenant agreed to assume full financial responsibility for payment of services to the building or restoration of service was ordered by the court. On January 30, 1995, appellants obtained a court order and gas service was restored. However, by the time the service was restored, appellants had already vacated the building in order to keep warm. Although the complaint is not part of the record before this court, appellants filed suit against Jarvis, alleging various violations of the Ohio Landlord/Tenant Act, R.C. Chapter 5321. Appellants were successful and received a favorable judgment on August 13, 1996.

Subsequent to the conclusion of their action against the landlord, appellants filed a complaint with the Public Utilities Commission of Ohio ("PUCO"), alleging that appellee had wrongfully terminated the gas service to the apartment building. During the pendency of the proceedings before the PUCO, appellants filed a complaint in the Belmont County Court of Common Pleas. In addition to asserting the same allegations contained in the complaint before the PUCO, appellants claimed that appellee's conduct violated the Consumer Sales Practices Act, R.C. Chapter 1345 ("CSPA"), that appellants were the intended third-party beneficiaries under the contract between appellee and Jarvis, and that appellee allegedly breached this contract. In lieu of filing an answer to the complaint, appellee filed a motion to dismiss this complaint on March 5, 1997. The trial court overruled appellee's motion in part and directed appellee to file a motion for summary judgment incorporating the remainder of the defenses contained in appellee's motion to dismiss by July 1, 1997.

Appellee requested various extensions of time within which to file its motion for summary judgment, presumably to await a decision from the PUCO regarding the complaint previously filed by appellants. On February 3, 1998, appellants filed for default judgment on the grounds that appellee never answered the complaint. The trial court overruled this motion on March 9, 1998.

On March 12, 1998, the PUCO rendered its decision on the complaint pending before it. The commission, in a lengthy and comprehensive discussion, determined that appellee had not provided inadequate service. Based on the ruling of the PUCO, appellee moved for summary judgment on April 29, 1998. Appellants responded with their own motion for partial summary judgment on July 13, 1998.

The trial court heard arguments concerning both motions on September 8, 1998, and, on October 2, 1998 rendered its decision granting appellee's motion for summary judgment, denying appellants' motion for partial summary judgment, and dismissing appellants' complaint. The trial court took judicial notice that the parties were subject to an order from the PUCO. However, assuming that the court had jurisdiction to hear any claims not brought before the PUCO, the court addressed the merits of appellants' CSPA claim as well as the breach-of-contract claim. The trial court determined that the CSPA did not apply to appellee as a public utility and that appellants were, at most, incidental beneficiaries to the service contract between appellee and Jarvis and therefore had no standing to bring an action based on that contract.

It is this decision, as well as the trial court's denial of appellants' motion for default, which forms the basis for the present appeal. In their brief to this court, appellants assert the following assignments of error:

"1. The trial court erred as a matter of law and abused its discretion in failing to sustain appellants' motion for default judgment.

"2. The trial court erred as a matter of law in holding that the events of this case were not a consumer transaction subject to the Consumer Sales Practices Act.

"3. In addition, the trial court erred as a matter of law in finding that appellants did not have legal standing to bring an action for breach of contract as creditor beneficiaries of the contract between Jarvis and Columbia.

"4. The trial court erred as a matter of law and abused its discretion in dismissing the remainder of appellants' claims."

■ Appellee here argues that the common pleas court was without jurisdiction to hear this matter as it is a public utility and the allegations against it relate solely to questions of service. Thus, the PUCO has exclusive jurisdiction in the matter pursuant to R.C. Chapter 4905. Appellants, on the other hand, concede that the PUCO has exclusive jurisdiction in disputes pertaining to service and rates of a public utility, but maintain that the causes of action articulated in their complaint are based on tort and contractual theories of liability which were properly before the lower court.

The General Assembly of Ohio, through enactment of R.C. Chapter 4905, has expressly empowered the PUCO with exclusive jurisdiction to determine whether a public utility has complied with its applicable responsibilities as a governmentally regulated entity. R.C. 4905.26 provides:

"Upon complaint in writing against any public utility by any person * * * that any rate, fare, charge, toll, rental, schedule, classification, or service, * * * or service rendered * * * is in any respect unjust, unreasonable, unjustly discriminatory, unjustly preferential, or in violation of law, or that any regulation, measurement, or practice affecting or relating to any service furnished by the public utility, or in connection with such service, is, or will be, in any respect unreasonable, unjust, insufficient, unjustly discriminatory, or unjustly preferential, or that any service is, or will be, inadequate or cannot be obtained, * * * if it appears that reasonable grounds for complaint are stated, the commission shall fix a time for hearing and shall notify complainants and the public utility thereof."

■ The Ohio Supreme Court has interpreted this statute to confer jurisdiction upon the PUCO to hear all complaints pertaining to rates and/or service provided by a public utility. *Kazmaier Supermarket, Inc. v. Toledo Edison Co.* (1991), 61 Ohio St.3d 147, 573 N.E.2d 655. Furthermore, where the PUCO does have jurisdiction as provided by this statute, that jurisdiction is exclusive and reviewable only by the Supreme Court of Ohio. *State ex rel. N. Ohio Tel. Co. v. Winter* (1970), 23 Ohio St.2d 6, 52 O.O.2d 29, 260 N.E.2d 827. This does not mean, however, that every claim asserted against a public utility is within the exclusive jurisdiction of the PUCO. Pure contract and common-law tort claims against a

public utility may be brought in a common pleas court because "the Commission has no power to judicially ascertain and determine legal rights and liabilities," or to award damages. *Milligan v. Ohio Bell Tel. Co.* (1978), 56 Ohio St.2d 191, 383 N.E.2d 575.

Therefore, the task before this court is to determine whether appellants' claim against appellee is primarily a question concerning service and/or rates or if the complaint raises, as appellants contend, pure tort, contractual, or statutory causes of action that are independent of service and/or rate-related questions. This court notes that the crux of appellants' claim against appellee is that appellee wrongfully terminated gas service to appellants' residence. The tort, contract, and statutory causes of action contained in appellants' complaint are merely theories of recovery based on that alleged wrongful termination.

■ The refusal or termination of service by a public utility is a matter which is in the exclusive jurisdiction of the PUCO, subject to an appeal to the Ohio Supreme Court. *Inland Steel Dev. Corp. v. Pub. Util. Comm.* (1977), 49 Ohio St.2d 284, 288, 361 N.E.2d 240, 243; *State ex rel. N. Ohio Tel. Co., supra.* Casting the allegations in the complaint to sound in tort or contract is not sufficient to confer jurisdiction upon a trial court when the basic claim is one relating to service, a claim which only the PUCO has jurisdiction to resolve. *Assad v. Cleveland Elec. Illum. Co.* (May 19, 1994), Cuyahoga App. No. 65532, unreported, 1994 WL 197228; *Gayheart v. Dayton Power & Light Co.* (1994), 98 Ohio App.3d 220, 648 N.E.2d 72. Illustrative as to this point is *Farra v. Dayton* (1989), 62 Ohio App.3d 487, 576 N.E.2d 807. In *Farra*, the court held that a complaint alleging tortious conduct on the part of a public utility in the removal of gas and electric meters was, nevertheless, a complaint regarding service. The characterization of the removal as intentional and even malicious did not remove the allegations in the complaint from the jurisdiction of the PUCO. *Id. at syllabus.* See, also, *Assad, supra* (holding that even allegations of retaliatory termination of electric service were a complaint as to service and within the exclusive jurisdiction of PUCO).

Appellants cite this court's decision in *Harris v. Ohio Edison Co.* (Aug. 17, 1995), Mahoning App. No. 94 CA 84, unreported, 1995 WL 494584, for the proposition that claims based on common-law negligence are not within the exclusive jurisdiction of the PUCO. Appellants' reliance on this case is misplaced. At issue in *Harris* were allegations that the utility company had not only negligently installed an electrical component that carried a risk of a dangerous and potentially deadly breach in its system, but also that the utility company had negligently, recklessly and intentionally failed to investigate and correct the problem despite repeated and urgent requests to do so. *Id.* These allegations, coupled with the risk of death and public safety, were sufficient to remove the

matter from the exclusive jurisdiction of PUCO and implicated a negligent act or omission to act rather than a mere service complaint. *Id.*

That is not the case before us. Appellants' entire cause of action is based on an alleged wrongful termination of gas service to appellants' residence. Phrasing this allegation in terms of contract or tort liability does not change this basic fact. Therefore, the trial court was without subject matter jurisdiction to decide this case on its merits.

Because the trial court lacked subject matter jurisdiction to rule on the merits of this case, each of appellants' assignments of error is moot. For all of the foregoing reasons, the judgment of the trial court granting appellee's motion for summary judgment, denying appellants' motion for partial summary judgment, and dismissing appellants' complaint is hereby affirmed.

*Judgment affirmed.*

Cox, P.J., and VUKOVICH, J., concur.